DANIEL *v*. THE STATE.

1. The incorporation into the Code of 1895 of the provisions of an act passed previously to that time cures any defect which may have existed in the original act by reason of its containing matter different from that expressed in its title, or attempting to amend a section of the code by mere reference to its number.
2. In an accusation for escape, based upon the Penal Code, § 314, where the court under whose sentence the accused was confined at the time of the alleged escape was established in pursuance of a public act of the General Assembly, it was not necessary to allege where such court was located or that it had jurisdiction to try the accused for the offense of which he was convicted ;. these facts appearing from the act itself, the material portions of which are to be read into the accusation.
3. The allegation, in an accusation for escape, that the accused " unlawfully " escaped from a named chain-gang, dispenses with the necessity of the further allegation that the chain-gang in question was a lawful place of confinement.
4. A clerical error in a certified copy of a court paper will not render the paper inadmissible in evidence, where it clearly appears from the context what the true purport of the document was.
5. A certified copy is primary evidence of the contents of any book or paper which is required by law to be kept in the office of its custodian.
6. A chain-gang controlled and managed by private persons, and over which the only act of authority exercised by the county authorities is the appointment of guards who are in the pay of such persons, is not a legal place of confinement, and one escaping therefrom can not be convicted under the Penal Code, § 314.

Argued December 16, 1901. — Decided February 4, 1902.

Accusation of escape.   Before Judge Proffitt.   City court of Elberton.   November 22, 1901.

*Z. B. Rogers,* for plaintiff in error.
. *T. J. Brown, solicitor,* contra.

LEWIS, J. The accused was tried in the city court of Elberton, upon an accusation based upon the Penal Code, § 314. The accusation, other than its merely formal parts, was in the following language: "For that the said Will Daniel did, in said [Elbert] county, on the 17th day of May, 1901, with force and arms, he, the said Will Daniel, having previously been convicted in the city court of Jefferson of the offense of simple larceny, the same being an offense below the grade of felony, and having on 23rd day of October, 1900, been by said court sentenced to pay a fine of 25 dollars and costs, or in default thereof to work in a chain-gang 12 months, and having been confined in the chain-gang of Elbert county to work out said sentence, unlawfully escape from the chain-gang of Elbert county, and was thereafter retaken; said escape being then and there contrary to the laws of said State," etc. The accused demurred to the accusation, on the grounds, (1) that the act under which the accusation was sworn out, as amended in Acts of 1884–85, p. 52, is unconstitutional, because the amendatory act seeks to amend an act of the legislature by mere reference to the code section, without describing the act to be amended or giving the proposed alteration; (2) that the act is unconstitutional, because matter is contained in its body different from that expressed in its title; (3) that the original act under which the accusation was sued out requires an indictment for every case of escape, and the accusation against the accused is therefore illegal; (4) that the accusation failed to allege that the city court of Jefferson had jurisdiction, or was a proper tribunal to try the accused for the offense of simple larceny, and further failed to allege where the city court of Jefferson was located; (5) that the accusation failed to allege that the chain-gang in which the accused was confined was a legal place of confinement; (6) that the accusation failed to allege that the accused was legally sentenced to serve in a chain-gang, and the words of the accusation relative thereto do not set out a legal sentence; (7) that the city court of Elberton has no authority to try criminal cases of any kind, because the act creating the court failed to provide for an accusation therein to be based on affidavit; and (8) that section 26 of the act of 1896 (Acts 1896, p. 293), establishing the city court of Elberton, is unconstitutional in that it does not give defendants in criminal cases due process of law. The demurrer was overruled; the case went to trial, and the accused was con-

victed. He made a motion for a new trial, which was overruled, and he excepted.

1. It is a sufficient answer to those grounds of the demurrer which complain that the act under which the accusation was sworn out is unconstitutional, that whatever defects may have existed in the act as originally passed were cured by the incorporation of the provisions of the act into the Code of 1895, and the adoption of that code by the General Assembly. See *Parks* v. *State,* 110 *Ga.* 760.

2. The city court of Jefferson was established by a public act of the General Assembly. Acts 1897, p. 485. The provisions of that act, so far as material, are to be read into the accusation, and it was therefore unnecessary to allege therein where the city court of Jefferson was located, or that it was a proper tribunal to try the accused for the offense of larceny.

3. In an indictment or accusation for escape, it is usually held to be necessary to allege that the place from which the accused is charged with escaping was a lawful place of confinement. 2 Bish. New Crim. Proc. § 943; State *v.* Hollon, 22 Kas. 580. But the only purpose that such an allegation can serve is, as is stated by Mr. Bishop, that the indictment or accusation may on its face show the escaping or breaking away to be a crime. The accusation in the present case charges that the accused did "unlawfully escape from the chain-gang of Elbert county." It would be manifestly impossible for the accused to "unlawfully" escape from a place which was not a lawful place of confinement. The use of the word "unlawfully" in the manner in which it is used here plainly puts the accused on notice that he is charged with a crime, and dispenses with the necessity of alleging that the place from which he escaped was a lawful place of confinement.

4. The State offered in evidence what purported to be a certified copy of the sentence of the city court of Jefferson, under which the accused was originally confined. The caption of this paper was as follows: " Georgia, Jackson county. In the city court of said county State of Georgia versus Will Daniel. Accusation for larceny, and plea of guilty." The sentence was signed: " W. W. Stark, Judge City Court Jefferson." Indorsed on the paper was the certificate of the clerk of the city court of Jefferson, that " the within sentence is a true extract from the minutes of the city court of Jefferson, October adjourned term, 1900, in the above-stated case." The cer-

tificate is signed: "J. L. Williams, C. C. C. J." Objection was made to the introduction of this paper, on the ground that it appeared to be a sentence from the city court of Jackson county, and not from the city court of Jefferson, and that the certificate of one purporting to be the clerk of the city court of Jefferson did not cure the defect; that the paper was too much of a mixture to be binding on a defendant in a criminal proceeding; and that it did not appear from the sentence to whom the accused was to be turned over, a blank space having been left for that purpose. The court below overruled these objections and admitted the paper in evidence; upon which error is assigned. It is to be observed that no attack is made on the validity of the sentence in question, objection being made to its admissibility in evidence merely on the ground of a variance between the caption and the body of the sentence. The paper was signed by the judge of the city court of Jefferson in his official capacity, and was certified by the clerk of that court to be a true copy from the minutes of the city court of Jefferson. The words, "In the city court of said county," appearing in the caption, were plainly the result of a clerical error, either in making out the original sentence or in transcribing it from the minutes of the court. Such a case comes clearly within the principle laid down in *Mayor* v. *Johnson*, 84 *Ga.* 279, and *Head* v. *Woods*, 92 *Ga.* 548 (2). The admission in evidence of the certified copy of the sentence was therefore not error.

5. The court, over the objection of the accused, admitted in evidence the original minute-book of the board of commissioners of roads and revenues of Elbert county, showing that the board had established a county chain-gang for the purpose of working the public roads of the county, the objection being that the original minutes were not the best evidence of what they attempted to establish, and that the minutes were not of themselves sufficient to establish a chain-gang. While it was permissible to show from the records of the county commissioners that a chain-gang had been established for the county, the objection that the original minutes were not the best evidence was well taken. The law specifically defines the method to be pursued in proving the contents of records of this character, and prescribes that as to all records required by law to remain in the office of their custodian certified copies shall be primary evidence. Civil Code, §§ 5211, 5212. See *Cramer* v. *Truitt*, 113 *Ga.* 967, and cases cited.

6. It appears from the evidence that the accused, after his conviction of the offense of larceny in the city court of Jefferson, was hired by the county authorities of Jackson to the board of commissioners of roads and revenues of Elbert county, and that the Elbert county authorities in turn hired him, with other misdemeanor convicts, to Swift Brothers, a firm doing business in Elbert county. Swift Brothers were private parties. They made a bond, with sureties, "to hold the county of Elbert blameless and free from damage and cost and expense for the management, control, and detention" of the convicts hired to them. The officers of the camp, while appointed by the county, were paid by Swift Brothers. The convicts were worked on a farm. Beyond the appointment of guards and bosses, who, as before stated, were paid by Swift Brothers, the county authorities had no control whatever over the convicts. All this is uncontroverted. We are constrained to hold that under the law of this State the accused was not, at the time of his escape, in a lawful place of confinement, and can not be punished for escaping therefrom, under the provisions of the Penal Code, § 314. The law regulating the punishment of misdemeanor convicts (Penal Code, § 1039) expressly provides "that nothing herein contained shall authorize the giving the control of convicts to private persons, or their employment by the county authorities in such mechanical pursuits as will bring the products of their labor into competition with the products of free labor." It would be absurd to hold that the mere appointment by the county of guards, without more, is such an assertion of control, management, and authority by it as to save the hiring of its misdemeanor convicts to private persons from repugnance to the proviso quoted, "That convicts can not be worked in chain-gangs controlled by private individuals is the well-settled law of this State." *Russell* v. *Tatum*, 104 *Ga.* 333, and cases cited. It follows from what has been said that the conviction of the accused for the offense of escape was unwarranted by the law and the evidence, and should have been set aside on motion for a new trial.

*Judgment reversed. All the Justices concurring.*