## A98A0549, A98A0550. NATIONSBANK, N. A. (SOUTH) v. TUCKER; and vice versa.
### (500 SE2d 378)

ELDRIDGE, Judge.

These actions arose from the guaranty of a promissory note by Jewett W. Tucker, defendant-appellee and cross-appellant, and suit to collect by the holder NationsBank, N. A. (South) plaintiff-appellant and cross-appellee ("NationsBank").

*Case No. A98A0549*

1. Plaintiff's sole enumeration is that the trial court erred in granting defendant's motion for partial directed verdict as to the issue of attorney fees. The case was tried before a jury on June 4, 1997. At the close of plaintiff's case-in-chief, defendant made a motion for partial directed verdict as to the issue of attorney fees on the ground that the plaintiff had failed to prove notice. Although the notice of intent to seek attorney fees under OCGA § 13-1-11 was attached to the complaint,[1] the plaintiff did not tender the complaint into evidence or a certified copy of the complaint. The plaintiff moved for leave to re-open evidence to tender the complaint. The trial court denied the motion and granted the partial motion for directed verdict.

(a) Proof of notice in compliance with OCGA § 13-1-11 (a) (3) at trial is necessary to recover attorney fees in a suit on a note, because notice is an element of the claim. *Union Commerce Leasing Corp. v. Beef 'N Burgundy*, 155 Ga. App. 257, 262 (4) (270 SE2d 696) (1980); *Carter v. Jenkins*, 143 Ga. App. 42, 43 (1) (237 SE2d 440) (1977). Where the plaintiff attached the notice to the complaint, but never tendered such into evidence, the elements of the claim for attorney fees were not proved, and the trial court did not err in granting a directed verdict as to the attorney fees claim. *Union Commerce*, supra at 262; *Carter*, supra at 43.

Plaintiff contends that the trial court should have taken judicial notice of the pleadings so that the evidentiary gap would be filled;

---

[1] Defendant had been served with the complaint and denied specifically in his answer any obligation for such attorney fees. In the pre-trial order, defendant contested the sufficiency of the notice. Thus, plaintiff was apprised by the pleadings what issues were contested and what had to be proved as part of the plaintiff's case.

plaintiff requested on the record that the trial court take judicial notice of the pleadings, which preserved the issue for appellate review. *Reserve Life Ins. Co. v. Peavy*, 98 Ga. App. 268, 272-273 (7) (105 SE2d 465) (1958); however, the exhibit as part of the pleadings is not subject to judicial notice as to its relevancy, identity, authenticity, and content, because such issues are a matter of proof and a matter for determination by the trier of fact as to weight and credibility after admission.

The judicial notice was requested as to that exhibit to the complaint which purported to be the notice of the intent to seek attorney fees attached to the complaint. Plaintiff wanted judicial notice taken, *not* that a document purporting to be the notice was attached to the complaint, but that the exhibit was a *sufficient* notice which satisfied OCGA § 13-1-11. OCGA § 9-11-10 (c) reads: "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," and controls the pleadings over an allegation. See *H & R Block v. Asher*, 231 Ga. 780, 781 (204 SE2d 99) (1974).

Under OCGA § 24-1-4, the trial court, when timely requested to do so, can take judicial notice of the court records in the action before the court, which includes pleadings. *Brown v. C & S Nat. Bank*, 245 Ga. 515, 518 (265 SE2d 791) (1980); *South America Managers v. Reeves*, 220 Ga. 493, 495 (140 SE2d 201) (1965); *State Dept. of Revenue v. McCray*, 215 Ga. 678 (113 SE2d 132) (1960). A trial court cannot take judicial notice of pleadings and orders of other courts of this State; however, the trial court can take judicial notice of the records of that court in other actions between the parties or their privies. *Petkas v. Grizzard*, 252 Ga. 104, 105 (312 SE2d 107) (1984); *Walker v. McLarty*, 199 Ga. App. 460, 461 (405 SE2d 294) (1991). The trial court could take judicial notice of the pleadings and the notice as an *exhibit*; however, the trial court could not take judicial notice that the exhibit was admissible, relevant, identified, authenticated, or the highest and best evidence, because such issues are a matter of proof that cannot be judicially noticed. The role of judicial notice is to eliminate formal proof as to: (1) "matters of which the general public has common knowledge"; (2) "facts which are readily ascertainable by reference to some reliable source, and are beyond dispute"; and (3) "matters which are within the special province of the judge." Green, Ga. Law of Evidence (4th ed.), § 4; see also *In the Interest of S. M.*, 169 Ga. App. 364, 366 (312 SE2d 829) (1983); *Batson-Cook Co. v. Shipley*, 134 Ga. App. 210, 212 (214 SE2d 176) (1975).

In this case, the matter that plaintiff wants judicially noticed falls outside OCGA § 24-1-4. The issue is in dispute and is a matter of proof. Thus, it was proper for the trial court not to take judicial notice of this issue.

Certified copies of such pleadings would have to be tendered into

evidence and received as primary evidence for the exhibit to be evidence before the court. OCGA § 24-5-31; *Bell v. Cone*, 208 Ga. 467 (67 SE2d 558) (1951); *Commerce Prop. v. Linthicum*, 209 Ga. App. 853 (1) (434 SE2d 769) (1993); *Rutland v. City of Dublin*, 50 Ga. App. 242 (177 SE 819) (1934); cf. *Mason v. State*, 197 Ga. App. 534 (398 SE2d 822) (1990); *Genins v. Boyd*, 166 Ga. App. 843, 844 (2) (305 SE2d 391) (1983); *Moody v. Roads &c. of Appling County*, 29 Ga. App. 21 (113 SE 103) (1922). When a copy of a trial court record is not tendered into evidence, testimony as to what is contained in such record is subject to a highest and best evidence objection, as well as a hearsay objection. *Lipscomb v. State*, 194 Ga. App. 657 (391 SE2d 773) (1990).

Judicial notice could be taken that the exhibit purported to be a notice of intent to seek attorney fees under OCGA § 13-1-11 (a) (3) and that it was filed with the court at a particular date attached to the complaint; however, judicial notice cannot be taken that the attached notice was, in fact, what it purported to be, a notice given in compliance with OCGA § 13-1-11 (a) (3).

(b) The plaintiff also contends that the defendant waived proof of the notice to seek attorney fees; however, the complaint, the pre-trial order, and the statements of defense counsel do not constitute either an admission in judicio or waiver of proof.

(c) The plaintiff also argues that the trial court abused its discretion in not granting plaintiff leave to re-open his case-in-chief to prove the notice.

The trial court has the discretion whether or not to allow the party to re-open the evidence in its case-in-chief. *Williams v. Lemon*, 194 Ga. App. 249, 252 (4) (390 SE2d 89) (1990); *Pickelsimer v. Traditional Builders*, 183 Ga. App. 709, 711 (4) (359 SE2d 719) (1987). "[T]his court will not reverse unless there has been an abuse of that discretion." *Pickelsimer*, supra at 711; *Newman v. Booker & Co.*, 133 Ga. App. 209 (210 SE2d 329) (1974). There was no abuse of discretion by the trial court.

### Case No. A98A0550

2. The defendant's first enumeration of error is that the trial court erred in admitting, over timely objection, unauthenticated copies of the note (plaintiff's Exhibit 1) and the guaranty (plaintiff's Exhibit 2).

Under OCGA § 9-11-10, plaintiff attached copies of the note and guaranty to the complaint as exhibits. Defendant had a duty to admit, deny, or state that he was unable to do either in his answer, to such exhibits as part of the pleadings under OCGA §§ 9-11-8 (b), (c), (d), (e) and 9-11-12 (a). The note and guaranty, as exhibits, were admitted in defendant's answer, see OCGA § 9-11-8 (b) and (d), and

became admissions in judicio that required no further proof. Further, NationsBank listed the note and guaranty in the pre-trial as having been admitted, which defendant did not dispute.

Such admissions in judicio were never withdrawn with leave of the court or amended. Even if such admissions in judicio were withdrawn, they remain as admissions against interest in the case. Thus, the plaintiff was entitled to rely upon the admissions contained in the answer that the copies were identified and authentic, and the admittance by the trial court was proper. See *Stallings v. Britt*, 204 Ga. 250 (49 SE2d 517) (1948); *Spurlock v. Commercial Banking Co.*, 151 Ga. App. 649 (260 SE2d 912) (1979).

3. Defendant's second enumeration of error is that the trial court erred (a) in admitting, over timely objection, hearsay evidence of the merger of Bank South and NationsBank; and (b) in predicating its grant of NationsBank's motion for directed verdict, and its denial of the defendant's motion for directed verdict upon such inadmissible hearsay evidence.

Capacity, or lack thereof, is a matter that must be specially pled and which raises the issue of standing. OCGA § 9-11-9 (a). The merger between NationsBank and Bank South was specifically pled in the complaint and goes to the standing to bring the suit as the successor legal entity. Under OCGA §§ 9-11-12 (b) (7) and 9-11-19, defendant was under a duty to raise any defense as to standing or assignment, and it failed to do so. Since there was a merger of the legal identities of the parties into one legal entity, then an OCGA § 9-11-19 defense was not available, because there no longer existed a "Bank South" to be an indispensable party or a real party in interest.

Testimony as to the merger of the corporate entities did not come under the hearsay rule at all. Such testimony by the bank official, who had been previously with Bank South and was now with Nations-Bank, explained the course of conduct of the plaintiff and the corporate "state of mind" after the merger in bringing the action to collect the note by NationsBank instead of by Bank South. See OCGA § 24-2-1. Testimony regarding the merger by an officer and agent of the successor legal entity was relevant and material to explain the course of conduct and corporate intent of the successor corporation after the merger and how the official came to have custody of the records. OCGA § 24-3-2; *Cook Farms v. Bostwick*, 165 Ga. App. 692 (302 SE2d 574) (1983); *Roberts v. Allen*, 31 Ga. App. 660 (122 SE 86) (1924).

Business records made and kept in the ordinary course of business are admissible as an exception to the hearsay rule. OCGA § 24-3-14. The custodian of such records explained how the records of one corporate entity became the records of another corporate entity through merger and in the ordinary course of business. Thus, under

OCGA § 24-3-2, the custodian of records can explain the merger of the corporate entities in order to explain why he is now the custodian of the business records of the predecessor corporation and his right to hold such documents. Further, defendant testified that Bank South was bought out in 1995 and that he dealt with the successor legal entity in regard to the renewal of the note and the giving of his personal guaranty.

4. Defendant's third enumeration of error is that the trial court erred in granting NationsBank's motion for directed verdict.

The trial court found that there was no consideration for the workout and release agreement between the defendant, Southeast Timberlands, Inc., and NationsBank or Bank South; however, defendant contends that his not filing bankruptcy and paying a part of the amount owed on the note and guaranty was consideration for the agreement.

There was no written evidence in the form of an agreement or release to support any "release agreement." There was only the testimony of the defendant that there was an oral agreement to release the guaranty. Defendant collateralized the loan with a deed to secure debt for (1) between 4,700 and 9,000 acres of land in Valambrosa Plantation; (2) on Fancy Hall tract; (3) different subdivision lots in Deer Run and Bryan County; and (4) his Macon residence. Defendant contended that he did not want to file bankruptcy and would have filed bankruptcy as a last resort; however, in March 1996, defendant put Southeast Timberlands in a Chapter 11 in bankruptcy court, because he could not pay debts when due.

NationsBank, as a secured creditor, retained the land and the power to foreclose even after the defendant placed Southeast Timberlands in bankruptcy. To foreclose while under Chapter 11, NationsBank would have to obtain release of the property by the trustee in bankruptcy to lift the automatic stay of creditors' legal actions against the debtor. No purported oral agreement with either NationsBank or Bank South stopped the defendant from, in fact, filing bankruptcy in March 1996; nor was there any written agreement by defendant which would have prevented him from, at any time, filing such bankruptcy. Certainly, *not* filing bankruptcy was not a valid consideration for any oral agreement to release the defendant from the guaranty under the facts and circumstances of this case.

The partial payment of a debt already owed, that was not doubtful but certain, provides no *new* consideration, because it is a promise to do what one is legally bound to do already. Thus, an oral agreement to release a debt without *new* consideration is not enforceable. OCGA § 13-3-40; *Johnson v. Hinson*, 188 Ga. 639 (4 SE2d 561) (1939); *Wright v. Threatt*, 146 Ga. 778 (92 SE 640) (1917); *Jones v. Med. Arts Clinics of America*, 187 Ga. App. 702 (371 SE2d 214)

(1988); *Tallent v. Scarratt*, 51 Ga. App. 577 (181 SE 141) (1935); *McCowen v. McCord*, 49 Ga. App. 358 (175 SE 593) (1934).

5. Defendant's fourth enumeration of error is that the trial court erred in denying defendant's motion to dismiss and the subsequent re-affirmance of such ruling.

A "long-term note" within the meaning of OCGA § 48-6-60 (3) is a note "when any part of the principal of the note falls due more than three years from the date of the note[.]" OCGA § 48-6-60 (4) defines a "short-term note" as a note in which "the whole of the principal of the note falls due within three years from the date of the note[.]" Here, the note was dated July 31, 1994 and was due on July 31, 1995. Thus, by its own terms the note sued upon in this case was a "short-term note."

A renewal of a pre-existing note is a new note and does not become a long-term note by piecing together, in serial fashion all pre-existing and subsequent notes for the purposes of OCGA § 48-6-77. See Rules & Regulations of the State of Georgia, Secretary of State, Chapter 560-11-8-.03 (4) (c); 1960-61 Op. Atty. Gen., p. 519. OCGA § 48-6-77 does not apply to the short-term note in this case. Further, OCGA § 48-6-77 does not provide protection to the debtor, but is a method to force the payment of intangible taxes when due. *Guthrie v. Bank South*, 195 Ga. App. 123 (393 SE2d 60) (1990); *Grant v. Oakey*, 108 Ga. App. 759 (134 SE2d 499) (1963). Thus, the trial court did not err in denying defendant's motion to dismiss.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 25, 1998.

*Warlick, Tritt & Stebbins, Charles C. Stebbins III*, for appellant.
*Beckmann & Lewis, John S. Lewis*, for appellee.